UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o U.S. Attorney's Office, Civil Division<br>601 D Street, NW<br>Washington, DC 20530<br><br>   Plaintiff,<br><br>  v.<br><br>DAVID MARESCA,<br>11141 Wheeler Ridge, Dr.,<br>Manassas, Virginia 20109<br><br>THEMIS LAW PLLC, SYNERGY LAW LLC,<br>1701 Pennsylvania Avenue N.W., Suite 200, Washington, D.C. 20006 &<br>8870 Rixlew Lane, Manassas, Virginia<br><br>MORPHEUS MARKETING &<br>MANAGEMENT CONSULTING FIRM LLC,<br>8870 Rixlew Lane, Manassas, Virginia<br><br>  - and -<br><br>FORECLOSURE DEFENSE CENTER LLC,<br>8870 Rixlew Lane, Manassas, Virginia<br><br>   Defendants. | Civil Action No. _____<br><br>**FILED UNDER SEAL** |

# COMPLAINT

Plaintiff, the United States of America, through undersigned counsel, brings this Complaint against Defendants David Maresca ("Maresca"), Themis Law PLLC ("Themis Law"), Synergy Law LLC ("Synergy Law"), Morpheus Marketing & Management Consulting Firm LLC ("Morpheus"), and Foreclosure Defense Center LLC ("Foreclosure Defense Center") (collectively "Defendants"), and alleges the following.

## INTRODUCTION

1. This is an action brought by the United States against Defendants for a temporary restraining order and preliminary injunction pursuant to 18 U.S.C. § 1345 arising out of Defendants' fraudulent mortgage foreclose rescue scheme, which has harmed scores of individuals, namely elderly individuals, nationwide.

2. Starting in 2016 and upon information and belief, continuing through to the present, Defendant David Maresca has conducted a fraudulent scheme through his companies, Themis Law, Synergy Law, Morpheus, and Foreclosure Defense Center LLC by marketing his companies as "law firms" that could assist distressed homeowners who were facing foreclosure to rescue their homes.

3. Defendants promoted their "law firms" to homeowners nationwide with mass marketing techniques—websites, advertisements, and call centers. In furtherance of this scheme, Defendants had victims sign retainer agreements that required the payment of fixed legal fees every month, usually in the amount of $500 to $1,000. The "law firms" then provided no legal services to the victims and, in numerous instances, the victims were forced into bankruptcy or lost their homes to foreclosure.

4. Upon information and belief, to date, the scheme has grossed more than $15 million dollars from its operations.

5. The United States seeks to prevent continuing and substantial injury to consumers victimized by this fraudulent scheme by bringing this action for preliminary injunction and other equitable relief under 18 U.S.C. § 1345 to enjoin the ongoing commission of wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331 and 1345.

7. This Court has personal jurisdiction over Defendant David Maresca because Defendant Maresca has transacted business in this District, the acts or omissions that give rise to this Complaint originated in the District of Columbia, and Defendant Maresca has minimum contacts with the District of Columbia. On or about October 19, 2021, Defendant Maresca participated in a reverse proffer of the evidence that would be used against him in a criminal case and was advised that he should not continue his companies as part of a foreclosure rescue scheme. As discussed further below, Defendant Maresca's operations have continued through different corporate forms.

8. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2). A substantial part of the events giving rise to this action occurred in this District.

## PARTIES

9. Plaintiff is the United States of America.

10. Defendant Themis Law was at all relevant times to this action, a limited liability company organized and existing under the laws of the District of Columbia. Themis Law LLC was registered in the District of Columbia on or about June 20, 2019. Themis Law LLC's registered agent was Person A, an attorney who has been disbarred from practice in the District of Columbia. Themis Law's principal place of business is listed as 1701 Pennsylvania Avenue N.W., Suite 200, Washington, D.C. 20006. However, that address is only a "virtual" office that Themis Law uses for mail forwarding service—no actual business is conducted there. All of Themis Law's operations are conducted at 8870 Rixlew Lane, Manassas, Virginia.

11. Defendant Synergy Law was a limited liability company organized and existing under the laws of the District of Columbia. Synergy Law was registered in the District of Columbia on or about October 17, 2016, with Maresca as its governor. Maresca had a co-owner, Person B. In their filing paperwork, Maresca and Person B stated that the "sole" purpose of Synergy Law "[was] [to provide] legal services to clients" and that both Maresca and Person B "agree[d] to abide by the [D.C. Bar] Rules of Professional Conduct." Synergy Law's certificate and registration were revoked on or about September 12, 2019.

12. Defendant David Maresca previously resided at 13159 Lakesville Drive, Nokesville, Virginia.[1] At all relevant times to this action, David Maresca was a majority owner of Themis Law and Synergy Law, and orchestrated and used Themis Law LLC and Synergy Law LLC to perpetrate the fraudulent scheme alleged herein, and directed the fraudulent acts alleged herein.

13. Defendant Morpheus is a company organized in the Commonwealth of Virginia on May 27, 2021. Person D is the registered agent for Morpheus. Upon information and belief, Person D is a romantic partner of Defendant Maresca.

14. Defendant Foreclosure Defense Center is a company organized in the Commonwealth of Virginia on June 30, 2022. According to corporate registration records, Foreclosure Defense Center's principal office is located 8870 Rixlew Lane, Manassas, Virginia. The sole organizer for Foreclosure Defense Center is Person C who is an attorney who also works for Themis Law.

---

[1] Defendant Maresca's Nokesville property is the subject of a partially sealed civil forfeiture action. *United States v. Real Property Located at 13159 Lakesville Dr.*, Civ. A. No. 21-0876 (CKK) (D.D.C.).

15. Upon information and belief, Synergy Staffing LLC ("Synergy Staffing") was a business incorporated in the state of Virginia effective April 11, 2019. Maresca was the corporation's agent and organizer, and listed the company's initial registered office and business office of the registered agent as 13159 Lakesville Drive, Nokesville, Virginia. Synergy Staffing's principal office where records of the company were to be kept was listed as 8870 Rixlew Lane, Suite 201, Manassas, Virginia 20109.

## FACTUAL BACKGROUND
### *Synergy Law*

16. In approximately 2016, Maresca and Person B formed Synergy Law in the District of Columbia. Maresca owned 90 percent of Synergy Law and Person B owned 10 percent.

17. From 2016 until 2019, to give the appearance that Synergy Law was a "national law firm," Maresca paid for monthly mail forwarding service from the address 1101 Connecticut Avenue, NW, Suite 450, Washington, D.C.

18. Upon information and belief, all of Synergy Law's operations were in Manassas, Virginia, where Maresca and others worked; Synergy Law had no business operations in the District of Columbia.

19. From 2016 until 2019, Maresca and others marketed Synergy Law with telephone, television, and internet advertising which told homeowners that attorneys with Synergy Law could help them avoid foreclosure.

20. On its website, Synergy Law marked itself as an "experienced full-service law firm" with "amazing lawyers on hand to assistance [sic] you through this difficult time." The website represented "[o]ur attorneys have strong work ethic [sic], sound integrity, and are dedicated to helping our clients receive the best possible resolution [.]" The website promised "[o]ur firm is here to help remove the burden of foreclosure and mortgage issues from your

shoulders." The marketing left no doubt that attorneys would directly handle negotiations with a client's lender: "We are your advocates…Our attorneys work with all lenders and service companies." Synergy Law's website also promised that "[f]iling for bankruptcy couldn't be easier with Synergy Law's amazing lawyers on hand to assistance [sic] you through this difficult time."

21. From 2016 until 2019, Synergy Law operated a call center at their office in Manassas, Virginia. Call center workers used scripts during their phone calls with homeowners in which Synergy Law falsely promised that an attorney would review the homeowner's case file; that this attorney knew their lender's "internal guidelines" for a "mortgage resolution"; and that an assigned "legal team" would contact the homeowner's lender to negotiate a resolution. As Maresca and others knew, these representations were false and fraudulent. Synergy Law never operated a "national law firm" and never provided legal services to homeowners. Synergy Law never had attorneys review all homeowner files and Synergy Law never had attorneys contact a client's lender to discuss a mortgage resolution.

22. From 2016 until 2019, when homeowners hired Synergy Law, the homeowners signed agreements in which Synergy Law promised to provide "legal representation," "attorney services," and "legal services" to the homeowner-client. Synergy Law required homeowner-clients to pay an initial retainer amount (often between $995 and $1,750) followed by a monthly recurring amount (often between $595 and $1,200) for as long as Synergy Law represented the homeowner.

23. If a Synergy Law foreclosure defense client actually needed legal services, Synergy Law's business model was to hire an "Of Counsel" attorney within Synergy Law's "referral network" who could assist the client with a court appearance, bankruptcy or other legal work.

24. Synergy Law required clients to sign a document titled "Engagement Agreement for Legal Representation," which included the following statements:

   a. "We are pleased that you have chosen Synergy Law, LLC to represent you in connection with your legal matters."

   b. "You have asked our firm, in conjunction with [Person B], to act as your attorney[.]"

   c. "The Firm, by and through our locally licensed Of Counsel Attorney Network hereby agree that Synergy Law LLC will provide legal services to our national client base pertaining to Client's real estate matter[.]"

25. Synergy Law also required clients to sign a "Scope of Representation" document which promised in greater detail that Synergy Law would provide its clients with several specific legal services, including "initial consultation and counseling of [c]lient's rights and options regarding their foreclosure action"; "[i]nitial review/evaluation of the complaint and preparation/service of filing of an answer with applicable affirmative defenses and possibly counterclaims, if applicable"; "[c]orrespondences [sic] with the court and opposing counsel"; "initiation of motion for affirmative relief"; "motions seeking summary judgment", and "court appearances, if applicable."

26. A document titled "Service/Retainer Agreement" expressly set forth that Synergy Law's "attorneys" were entitled to payment for legal services even if the client was dissatisfied: "The Client's failure to make payments in a timely manner as prescribed herein shall authorize Attorneys not to do any further work on the Client's behalf, and shall, at the option of the Attorneys, be deemed to be their discharge [sic] by the Client ...You have the right to cancel our services as your Attorneys at any time."

27. From 2016 until 2019, clients paid Synergy Law via processing services that were typically used by legitimate law firms which deposited victim payments into a Synergy Law account. Once victim funds were in that account, Maresca and others used those funds for their personal benefit.

28. From 2016 until 2019, Synergy Law did not provide legal services to clients as promised in their retainer agreements but continued to collect monthly payments from clients. When Synergy Law clients faced imminent foreclosure on their homes, Synergy Law provided non-legal bankruptcy petition preparation services and directed clients to file pro se bankruptcy petitions to stop foreclosure. Synergy Law directed clients not to disclose that the clients had worked with Synergy Law to prepare their bankruptcy petition.

29. From 2016 until 2017, Person B was a co-organizer and attorney affiliated with Synergy Law. In 2017, New Jersey suspended Person B's license for two years, and in 2018, the District of Columbia issued a reciprocal two-year suspension. Person B was incarcerated in Monroe County, Pennsylvania from January until June 2019 for a felony conviction. During this time, there was no attorney who was a member of Synergy Law who could practice law.

30. During 2018 and 2019, when bankruptcy judges, Synergy Law clients, and the U.S. Trustee's Program raised concerns about Synergy Law's practices in bankruptcy matters, Employee 1 of Synergy Law attended court hearings on behalf of Synergy Law where they made false statements to the court about Synergy Law's operations.

31. Between 2016 and 2019, Maresca and others used the interstate wires in order to operate their "law firm" in ways that were essential to the scheme, such as soliciting clients by telephone.

32. When faced with foreclosure sales, several victims were told by Synergy Law to file an initial bankruptcy petition to stop the sale of the property. Many of those victim homeowners were instructed by Synergy Law to complete and file bankruptcy petitions in the U.S. Bankruptcy Court as an individual, omitting that they had retained Synergy Law's services.

33. Many of the victim homeowners were elderly low-income individuals who were in desperate financial situations.

34. Client A, a sixty-year-old government contract employee, contacted Synergy Law in early 2018, after they were unable to obtain a loan modification from their mortgage company for their house located in the District of Columbia. Client A stated that they were desperate to save their house and believed that they were hiring a team of attorneys and industry experts to help them obtain a loan modification. Client A stated that Synergy Law was located in Manassas, Virginia. On May 31, 2018, Client A contacted Synergy Law telephonically and spoke to a representative who emailed Client A an application. The Synergy Law representative then set up automatic payments to be debited from Client A's bank account. Client A was told by the representative that the automatic payments had to be set up. During this call, Client A's first payment was debited. Client A stated that they paid a couple thousand dollars in total to Synergy Law. Client A sent various documents to Synergy Law to negotiate a loan modification. Client A then contacted their mortgage company who told Client A that no one from Synergy had contacted the mortgage company. When Client A attempted to stop payments to Synergy Law, a representative from Synergy Law told Client A that they signed a contract, and that Synergy Law would sue if the payments stopped. When Client A told Synergy Law that the mortgage company had received no communications from Synergy Law, the Synergy Law representative told Client A that the mortgage company was lying. Synergy Law refused to issue a refund to Client A.

35. Employee 2 was a former employee of Synergy Law who worked for several months during the scheme as a "closer." As a "closer," it was Employee 2's responsibility to walk potential clients through an eight-page script that was upon information and belief, written by Maresca. The script, which had to be memorized by Employee 2, told the potential client that Synergy Law could help them from foreclosure. However, a key component of the script was that Synergy Law could not start assisting the client until the retainer was paid. The retainer was set at between $700 and $1,500. Employee 2 stated that calls would last approximately 45 minutes and the most important information gathered was the potential client's ability to pay the retainer. If the client's case was deemed hopeless, no work was performed by Synergy Law, including not contacting the mortgage holders, but Synergy Law did string the clients along to continue to pay the monthly fees. Employee 2 stated that Maresca was the person in charge of Synergy Law and had a hands-on approach, including listening in on the phone calls of employees.

36. Between in or about January 2019 and in or about June 2019, when Person B was incarcerated in Pennsylvania, Maresca and others continued to operate Synergy Law and collect monthly payments purportedly for legal services. During this time, there was no attorney who was a member of Synergy Law who could practice law.

37. Between 2016 and 2019, Maresca and others used the interstate wires in order to operate their "law firm" in ways that were essential to the scheme, such as soliciting clients by telephone.

38. During 2019, to avoid lawsuits and judgments against Synergy Law, Maresca filed a Chapter 7 bankruptcy on behalf of Synergy Law in the U.S. Bankruptcy Court for the District of Columbia. But prior to filing for bankruptcy, Maresca transferred all of Synergy Law's clients to another law firm that Maresca and co-founder, Person A created and called Themis Law PLLC.

39. On July 11, 2019, Synergy Law notified its clients that all of their cases were being re- assigned to "Themis Law PLLC" going forward.

### *Themis Law*

40. In approximately June 2019, Maresca and Person A formed Themis Law in the District of Columbia. Maresca owned 90 percent of Themis Law and Person A owned ten percent.

41. Person A was a sole practitioner licensed in the state of Florida and the District of Columbia, and the owner of "[Person A]'s Law Firm."

42. Although nominally a law firm, Person A was the only licensed attorney who was a member of Themis Law. Themis Law provided only non-legal foreclosure defense services and non-legal bankruptcy petition preparation services.

43. Upon information and belief, although Themis Law was owned in part by an attorney, it never employed attorneys and never provided legal services to anyone.

44. From its formation until at least 2022, to give the appearance that Themis Law was a "national law firm," Maresca paid for monthly mail forwarding service from the address 1701 Pennsylvania Avenue, NW, Washington, D.C. All of Themis Law's operations were in Manassas, Virginia at the same location, and with many of the same employees as Synergy Law; Themis Law had no business operations in the District of Columbia.

45. In or about August 2019, Themis Law entered into a Support Services Agreement with Person A's law firm, "[Person A's] Law Firm" in which Themis Law agreed to be a subcontractor who would perform non-legal work, such as bankruptcy petition preparation, for Person A's law firm at an agreed-upon flat rate. Maresca and Person A executed the agreement.

46. The contract between Maresca and Person A provided that "[u]nder no circumstances...shall Themis or any person employed or engaged by Themis provide any form or

manner of legal advice, counselling, direction or interpretation to a client of [Person A's Law Firm]."

47. From 2019 until at least 2022, Maresca and others marketed Themis Law with television and website advertising which told homeowners that attorneys with Themis Law could help them avoid foreclosure.

48. Similar to its website marketing for Synergy Law, Themis Law's website promised perspective clients "[w]e're on your side" and "[o]ur legal experts don't just have experience—we know how [sic] the ins and outs of getting things done."

49. The DCRA revoked Themis Law's registration and business certificate on September 17, 2020. Law enforcement executed a search warrant at Themis Law's office in Virginia on May 6, 2021. Nonetheless, Themis Law continued operations after the search and re-applied to the DCRA to have its registration reinstated on September 10, 2021. Maresca continued to make monthly payments for the mail forwarding service for Themis Law until July 2022.

50. From 2019 until at least 2022, Themis Law operated a call center at their office in Manassas, Virginia.  Much like Synergy Law, call center workers used scripts during their phone calls with homeowners in which Themis Law falsely promised that an attorney would review the homeowner's case file; that this attorney knew their lender's "internal guidelines" for a "mortgage resolution"; and that an assigned "legal team" would contact the homeowner's lender to negotiate a resolution.

51. Upon information and belief, the scripts used by Synergy Law and Themis Law were identical, with both written by Maresca. Maresca required new closers to memorize the script.

52. From 2019 until at least 2022, when homeowners hired Themis Law, the homeowners signed agreements in which Themis Law promised to provide "legal representation,"

"attorney services," and "legal services" to the homeowner-client. Themis Law required homeowner-clients to pay an initial retainer amount followed by a monthly recurring amount for as long as Themis Law represented the homeowner.

53. From 2019 until at least 2022, clients paid Themis Law via processing services that were typically used by legitimate law firms which deposited funds into Themis Law's account. Once client funds were in that account, Maresca and others used those funds for their personal benefit.

54. Client B, a forty-five-year-old Navy veteran, contacted Themis Law in approximately January 2019 for assistance to negotiate better terms and a lower interest rate for a home that they owed in Chesapeake, Virginia. Client B paid Themis Law $800 per month which was automatically charged to Client B's credit card every month. Themis Law told Client B that Themis Law could save Client B's house and get Client B a better interest rate, and Themis Law would deal directly with the mortgage company on behalf of Client B. Client B emailed Themis Law a number of documents. Approximately seven months later in July 2019, Client B's spouse called the mortgage company and was told that Themis Law had never contacted them. Client B then contacted Themis Law and was told by a representative "they [the mortgage company] can tell you anything." Client B told the Themis Law representative she would stop payment to Themis. The representative hung up on Client B and Themis Law continued to charge Client B's credit card.

55. From 2019 until at least 2022, Themis Law did not provide legal services to clients as promised in their retainer agreements but continued to collect monthly payments from clients. When clients of Themis Law faced imminent foreclosure, Themis Law advised those clients to consider filing for bankruptcy to save their home. Themis Law referred these clients to Person A

and Person A's law firm.  Those clients then signed a new retainer agreement and paid additional fees to Person A.

56. On March 24, 2022, Person A was disbarred by consent in the District of Columbia. On May 23, 2022, Person A sent a letter to all "Themis Client[s]" that he was no longer practicing law and resigning from Themis effective immediately. On that same date, Person C wrote to all "Themis Clients" that he was "overseeing the modification department at Themis Law PLLC to ensure you are given the best possible service."

57. During 2020 and 2021, when an undercover agent from the Federal Bureau of Investigation ("FBI") contacted Themis Law posing as a distressed homeowner, Themis Law made false promises to provide legal services and collected payments from the undercover agent.

### *Purchase of Property with Funds Involved In, and Traceable To, Illegal Activity*

58. Capital One Bank ("Capital One") is a financial institution with its deposits insured by the Federal Deposit Insurance Corporation.

59. Sunshine Title & Settlement, Inc. ("Sunshine Title") is a company involved in real estate closings and settlements.

60. Between the years 2016 and 2018, Synergy Law maintained several bank accounts. Synergy had an operating account at Capital One (x-0777). Maresca had signature authority for Account x-0777, which was opened on or about April 6, 2017. Account x-0777 received funds from Synergy Law's clients who false believed that Synergy Law was providing legal services to them.

61. On or about May 24, 2018, Maresca purchased a cashiers check from Capital One drawn against Account x-0777 payable to Sunshine Title in the amount of $150,000. That cashiers check included on its face the following note: "EARNEST DEPOSIT 13159 LAKE HILL DR,"

which is Maresca's Nokesville residence. The cashiers check was then deposited into an account held by Sunshine Title on or about May 31, 2018.

62. On or about August 29, 2018, Maresca purchased a second cashiers check from Capital One drawn against Account x-0777 payable to Sunshine Title in the amount of $165,083.42.

63. On or about August 29, 2018, Maresca closed on the purchase of the Nokesville residence. At the closing, Sunshine Title credited the earnest money deposit towards Maresca's purchase of the property. Upon information and belief, the second cashiers check for $165,083.42 was used to cover the cash-at-closing for the purchase of the Nokesville residence.

### *Defendant Maresca's Ongoing Fraudulent Scheme*

64. Upon information and belief, Maresca has continued the mortgage foreclosure rescue scheme through the creation of at least two additional entities, Morpheus and Foreclosure Defense Center.

65. Upon information and belief, in Greek mythology, "Themis" is the Greek goddess of justice, divine order and law. "Morpheus" is the Greek god of sleep and dreams.

66. Morpheus Marketing & Management Consulting Firm LLC ("Morpheus") is a limited liability company organized in Virginia on May 27, 2021. The registered agent and sole organizer for Morpheus is Person D. Upon information and belief, Person D is a current employee of Morpheus and/or Foreclosure Defense Center. Person D is also known to law enforcement as a romantic associate of Maresca. On July 18, 2022, Maresca told law enforcement that Morpheus provides consulting, managing, staffing, and marketing services for his business. On April 27, 2023, an FBI agent observed Person D on the premises of 8870 Rixlew Lane, Manasas, Virginia, where there is a sign outside of the building that says "Morpheus."

67. Foreclosure Defense Center is a limited liability company that was organized under the laws of Virginia on June 30, 2022. Foreclosure Defense Center maintains its principal place of business at 8870 Rixlew Lane, Manassas, Virginia 20109. The articles of organization list Person C as the organizer for Foreclosure Defense Center. Person C is an attorney who is a member of good standing in the District of Columbia.

68. Upon information and belief, 8870 Rixlew Lane is the same address listed as the principal business address for Synergy Staffing, which is owned by Maresca. On July 18, 2022, Maresca told law enforcement that his business currently was conducting loan modification services.

69. During the course of its investigation, an undercover FBI agent met with Themis Law employees at 8870 Rixlew Lane.  Within the past 30 days, the FBI has conducted physical surveillance at 8870 Rixlew Lane on multiple occasions and observed signs that read "Morpheus" and "Foreclosure Defense Center" at the same location as what was formerly known as Synergy Law and Themis Law.  During that same time period, the FBI has also observed Maresca and Person D on the premises of 8870 Rixlew Lane during ordinary business hours.  The FBI has further observed other persons who appear to be employees entering and leaving the office space currently occupied by Morpheus and Foreclosure Defense Center.

70. As recently as March 28, 2023, law enforcement received a report from a victim who had been a "client" of Themis Law since November 2021 and who had received no legal services despite making at least 14 timely monthly payments.

71. Upon information and belief, Morpheus and Foreclosure Defense Center currently use Bank of America to maintain bank accounts which receive victim funds.

72. Upon information and belief, the United States alleges that Defendants have knowledge that their conduct facilitates a mail and wire fraud scheme.

### *Harm to Victims*

73. Defendant Maresca and others received money from thousands of client-victims who believed they were hiring attorneys to provide legal services.

74. Based on information and belief, Maresca and others generated proceeds of no less than $15 million through their false and fraudulent representations to homeowners that they would provide legal services to their victims.

75. Victims suffer financial losses from the mail and wire fraud scheme facilitated by Defendants. Those victimized by the scheme reside across the United States, including in this district.

76. Upon information and belief, Defendant Maresca and his companies are continuing to facilitate the foreclosure rescue scheme through the companies Morpheus and Foreclosure Defense Center at the same location—8870 Rixlew Lane, Manassas, Virginia—where they previously operated their scheme as Synergy Law and Themis Law. Absent injunctive relief by this Court, Defendants' conduct will continue to cause injury to victims across the United States.

### **CLAIM FOR RELIEF: INJUNCTION**
### **18 U.S.C. § 1345**

77. The United States realleges and incorporates by reference the preceding paragraphs of this Complaint as through fully set forth herein.

78. By reason of the conduct described herein, Defendants violated, are violating, and are about to violate 18 U.S.C. § 1343 by executing a scheme or artifice to defraud for obtaining money by means of false or fraudulent representations with the intent to defraud and, in so doing, using wire communications.

79. Defendants have also violated, are violating, and are about to violate 18 U.S.C. § 1341 by executing and attempting to execute a scheme or artifice to obtain money by means of false or fraudulent representations with the intent to defraud, and in so doing, using mail communications.

80. Upon a showing that Defendants are committing or are about to commit wire fraud and/or mail fraud violations, the United States is entitled, under 18 U.S.C. § 1345, to a preliminary injunction restraining all future fraudulent conduct and any other action that this Court deems just to prevent a continuing and substantial injury to the victims of fraud.

81. As a result of the foregoing, the Court should enjoin Defendants' conduct pursuant to 18 U.S.C. § 1345.

## PRAYER FOR RELIEF

82. WHEREFORE, the United States of America requests of the Court the following relief:

A. That the Court issue a temporary restraining order and preliminary injunction pursuant to 18 U.S.C. § 1345, that the Defendants, their agents, officers, and employees, and all other persons or entities in active concert or participation with them, are restrained from:

1. committing mail fraud in violation of 18 U.S.C. § 1341;
2. committing wire fraud in violation of 18 U.S.C. § 1343;
3. defrauding consumers, financial institutions, and others, in any way;
4. incorporating or exercising control over any additional corporate entities in furtherance of the scheme;

5. transferring, alienating, encumbering, and/or disposing of, or otherwise taking any action with respect to monies received from, owned by, or in the possession of Defendants;

6. making any false statement to any financial institution with respect to any financing transaction;

7. accepting consumer payments related to any mortgage foreclosure assistance;

8. destroying, deleting, removing, or transferring any and all business, financial, accounting, and other records concerning Defendants' business operations;

B. That the Court order that, within two days from the Defendants' receipt of the temporary restraining order, the Defendants provide a copy of the temporary restraining order to each affiliate, employee, agent, partner, member, owner, independent contractor, and representative of the Defendants, and shall, within ten days from the date of entry of the temporary restraining order, provide the United States with a sworn statement that this provision of the temporary restraining order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the temporary restraining order; and

C. That the Court order that, within two days from the Defendants' receipt of the temporary restraining order, the Defendants provide a copy of the temporary restraining order to all current clients and persons receiving services from the Defendants, and shall, within ten days from the date of entry of the temporary restraining order, provide the United States with a sworn statement that this provision of the temporary restraining order has

been satisfied, which statement shall include the names, physical addresses, phone number, and email address of each such person who received a copy of the temporary restraining order;

D. That the Court appoint a temporary receiver over Defendants Synergy Law, Themis Law, Morpheus, and Foreclosure Defense Center;

E. That the Court enjoin on a preliminary and permanent basis all future fraudulent conduct and any other action that the Court deems just in order to prevent a continuing and substantial injury to the persons and entities affected by the Defendants' wire fraud and mail fraud violations, including without limitation, current, past, and future customers of Defendants; and

F. That the Court order such other and further relief as the Court shall deem just and proper.

Dated: May 2, 2023
Washington, DC

    Respectfully submitted,

    MATTHEW M. GRAVES, D.C. Bar #481052
    United States Attorney

    BRIAN P. HUDAK
    Chief, Civil Division


By: /s/ *Brenda González Horowitz*
    BRENDA GONZÁLEZ HOROWITZ
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2512

*Attorneys for the United States of America*